39 F.3d 1182
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carl Henry DUCKWALL, Defendant-Appellant.
 No. 93-2575.
 United States Court of Appeals, Sixth Circuit.
 Oct. 31, 1994.
 
 Before: KENNEDY and JONES, Circuit Judges; and DEMASCIO,* District Judge.
 PER CURIAM.
 
 
 1
 Defendant, Carl Duckwall, pled guilty to one count of bank fraud. He now appeals, raising the issue of whether the District Court erred in ordering restitution for the full amount of the loss sustained by the victim. We reverse and remand for further proceedings.
 
 I.
 
 2
 Defendant owned Leelanau Marine, a boat dealership financed by ITT Financial Corporation. Under the terms of the financing agreement, defendant was required to pay ITT a portion of the proceeds of each sale. ITT monitored Leelanau Marine's inventory by conducting monthly floor plan inspections.
 
 
 3
 In the mid 1990's, Leelanau Marine suffered financial difficulties stemming from a variety of sources. To help ease these difficulties, which defendant hoped were temporary, defendant stopped paying ITT its share of each sale. Instead of forwarding these monies to ITT, defendant used them to shore up his business.
 
 
 4
 This scheme required defendant to find ways to deceive ITT about the actual condition of Leelanau Marine's inventory. Defendant accomplished this goal in two primary ways. First, he would offer free storage to all boat customers. This kept many boats on the business' premises. Defendant would lie to ITT's inspectors about the status of these boats, asserting that they were unsold. If this method did not result in the appropriate inventory count, defendant would have his salespeople retrieve boats from their new owners, usually under the pretext of conducting warranty repairs.
 
 
 5
 Defendant's scheme began to unravel in July 1991, when ITT became aware of the problems. On February 11, 1993, the United States indicted defendant on seven counts of mail fraud, two counts of bank fraud, and one count of wire fraud. On September 2, 1993, defendant pled guilty to count one of the indictment, which accused him of falsifying the July 1990 inventory inspection report to ITT. The District Court sentenced defendant to eighteen months in prison and three years supervised release, as well as ordering him to pay $190,000 in restitution to ITT. Defendant now appeals.
 
 II.
 
 6
 Defendant argues that the $190,000 restitution figure is erroneous because it represents the entire loss to ITT, not just the loss attributable to count one. The United States concedes that the District Court can only order defendant to pay restitution for the losses attributable to count one.[1] According to the United States, however, ITT's entire loss can be traced back to the false report named in count one.
 
 
 7
 The United States made a similar argument in United States v. Jewett, 978 F.2d 248 (6th Cir.1992), a mail fraud case. That case involved a multi-count indictment charging Jewett with aiding and abetting a bid-rigging scheme. Jewett pled guilty to the first two counts of the indictment, and the district court ordered him to pay restitution for the full amount of money involved in the scheme. On appeal, the United States defended the district court's actions, contending that the existence of a scheme was a necessary element of a mail fraud charge. Accordingly, the United States argued that the entire scheme was subsumed in the counts to which Jewett pled guilty.
 
 
 8
 This court rejected the United States' argument and vacated the restitution award:
 
 
 9
 The "specific conduct" for which defendant Jewett was convicted was mail fraud, not executing a fraudulent scheme. The existence of a scheme to defraud Ford of over $650,000 does not, and cannot, alter the statutory command that restitution under the VWPA be limited to "victim[s] of [the] offense" of conviction. In this case, the offenses of conviction were the two uses of the mails in the execution of a scheme to defraud Ford. The district court, in ordering restitution based on all losses caused by defendant Jewett's scheme to defraud rather than those attributable to the specific mailings for which Jewett was charged and convicted in Counts I and II, exceeded its statutory authority....
 
 
 10
 Id. at 252; see also United States v. Streebing, 987 F.2d 368 (6th Cir.), cert. denied, 113 S.Ct. 2933 (1993).
 
 
 11
 The United States' argument in the present case represents yet another attempt to create an exception that will swallow the rule. It argues that if ITT had discovered defendant's activities at the time of the first false report, it would have terminated its financing arrangements and prevented the losses arising from the subsequent false reports. However, the same can be said of any criminal venture: if the criminals are caught early enough, they would not be able to carry out further criminal activity and cause further losses. The first false report, however, did not cause any subsequent false reports in the sense that they inevitably followed.
 
 
 12
 The United States attempts to bolster its argument by referring to United States v. Diamond, 969 F.2d 961 (10th Cir.1992). In Diamond, the defendant and his company borrowed money from the Small Business Administration ("SBA"). In reversing the district court's award of full restitution, the Tenth Circuit stated:
 
 
 13
 No dispute exists that Mr. Diamond's false reports induced the SBA to extend its outstanding loan. However, the fact remains the SBA loaned [Diamond's company] the $1.7 million before Mr. Diamond submitted the false reports....
 
 
 14
 ... No evidence exists the SBA lost any money or suffered any detriment as a result of Mr. Diamond's false reports.
 
 
 15
 Id. at 966.
 
 
 16
 The United States maintains that this holding implies that if Diamond had not dissipated his assets before making the false reports, the SBA would have been able to mitigate its losses by calling the loan at a time when it could recover some of those assets. Thus, according to the United States, full restitution would have been appropriate except for the fact that Diamond possessed no assets at the time of the false reports. We decline to read this inference into the Tenth Circuit's opinion and to apply Diamond so broadly.
 
 
 17
 The District Court erred in ordering defendant to pay restitution for the full amount of ITT's loss. Instead, the District Court should only have ordered restitution for the portion of the loss directly attributable to the false report named in count one.
 
 III.
 
 18
 We VACATE the District Court's order of restitution and REMAND for further proceedings on that issue.
 
 
 
 *
 The Honorable Robert E. DeMascio, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Congress has amended the Victim and Witness Protection Act and expanded the scope of restitution that can be awarded to victims of a scheme or conspiracy. Pub.L. No. 101-647, 104 Stat. 4863, 4931 (codified at 18 U.S.C. Sec. 3663(a)(2) (West Supp.1994)). This amendment became effective after defendant falsified the July 1990 report. Both parties agree that, for the reasons we articulated in United States v. Jewett, 978 F.2d 248, 252-53 (6th Cir.1992), this amendment cannot be applied retroactively. Therefore, we do not consider it in deciding this case